## 'Robins *against* Kitchen.

In an action of replevin upon the issues of *non demisit*, and no rent in arrear, it is competent for the plaintiff to show that he was induced to execute the lease, and become the tenant of the defendant by fraud and misrepresentation, and that at the time it was executed, he was really the owner of the land himself.

ERROR to the common pleas of *Columbia* county.

Joseph Robins against William Kitchen. Replevin for a horse which had been taken by the defendant as the property of the plaintiff, upon the warrant of Thomas Woodside, landlord, for ten dollars rent. The defendant avowed the taking, and made cognizance as the bailiff of Thomas Woodside, and went to trial upon the issue of *non demisit,* and no rent in arrear.

The plaintiff gave the lease in evidence, after proving it by the subscribing witness. After which, the plaintiff called several witnesses, who gave evidence of various misrepresentations and threats made by Woodside to the plaintiff, to induce him to sign the lease, made the following offer:

" To prove that he has a good title to the tract of land mentioned and described in the lease in evidence, and that his title was good at the date of the lease to Mr Woodside, and that Mr Woodside, or those for whom he claims the land, have not, nor had they at any time, as good a title as plaintiff, at the date of the lease. He offers to prove this, by showing that plaintiff purchased the land for a valuable consideration, of John Robins, more than 30 years ago, and has held possession of the property ever since, under a claim of title."

This testimony is also offered to show misrepresentation and fraud on the part of Mr Woodside, in stating that he had all the rights to the land.

Plaintiff also offers a record of a suit by Matthew M'Connel *v.* Stephen Drake and Robert Ritchie, No. 119, April term 1803, in the court of common pleas of Northumberland county, and circuit court, with proof that this is for the same land; with proof that Stephen Drake was in possession of this land in 1803.

The evidence objected to by defendant.

The court permitted the plaintiff to prove that Thomas Woodside had not the title of M'Connel or Jones, and that he was not agent for them; and also to prove the falsehood of any representation made by Thomas Woodside to plaintiff, but reject the evidence of the plaintiff's own purchase of John Robins and his possession under that claim, those facts being as well known to plaintiff when

[Robins v. Kitchen.]

he entered into the lease as he knows them now.   The court also reject the record.   Plaintiff excepted.

Assignment of errors:

1. The court erred in rejecting the evidence offered by plaintiff, of his purchase of John Robins and his possession under that purchase, for more than thirty years, at the date of the lease in evidence.

2. The court erred in rejecting the record from Northumberland county, and the evidence offered in connection with it.

*Montgomery* and *Cooper*, for plaintiff in error.
*Comley* and *Frick*, for defendant in error.

The opinion of the Court was delivered by

Gibson, C. J.—The case proposed by the plaintiff's evidence was that he had been drawn in to take a lease, not only by misrepresentation, but by practice on the intellects and fears of an ignorant, imbecile and timid old man; but the judge, in effect, restricted the inquiry to the allegation of misrepresentation only.   He allowed evidence to be given in disproof of representations whose falsity lay not within the plaintiff's knowledge; but, on the ground that he could not be deceived by those he knew to be unfounded, he rejected evidence that the plaintiff himself had procured one of the titles represented by the lessor, and that he had been in adverse possession for thirty years under it.   For the present, then, he must be taken to have had an indisputable title, as he offered to prove it; and his having consented to yield it, would certainly have been not only competent, but powerful evidence that he had been prevailed on to accept the lease by reason of a belief induced by the lessor's representations, that the Jones, or the M'Connel title was superior to his own.   A successful resistance to a deed for fraudulent representations would require the party to have been actually misled; and no proof of it can be more convincing than that he was persuaded to give up his estate by it.   No man in his senses would do so, were he not under a strong delusion.   It would be proof *per se* of mental imbecility; and when combined with misrepresentations and repeated threats, no one could believe that any purpose effected by it was an honest one.   It has been justly said that the party's mind will the more readily be supposed to have been inadequate to what he was about, if the provisions of the deed be extraordinary, or the conveyance be without consideration; 1 *Fonb.* 62; and the principle is sustained by Bennet *v.* Vade, 1 *Atk.* 236, and Bridgeman *v.* Green, 2 *Ves.* 627, as well as by Patterson *v.* Patterson, 6 *Serg. & Rawle* 56, in which it was applied to a will. In Clark *v.* Hanway, 2 *P. Wms.* 203, it was said to be fraud apparent on the face of the deed, that the grantor had, at the age of seventy-two, conveyed an estate worth forty pounds a year, for an annuity of twenty, secured by a covenant instead of a mortgage.

[Robins v. Kitchen.]

Such a case, however, is inconceivably light when weighed with the surrender of an estate by a silly old man, to prevent himself from being turned out of it.   Conceding that he had a clear title—and none can be clearer than that which has grown from an adverse possession of twenty-one years—the charge of misrepresentation would require but little proof; for, without fraud or surprise, none but an idiot would voluntarily sink from the level of a fee-simple owner to the subordinate condition of a tenant for years.   The whole evidence, therefore, including the record of the former trial, provided it were between those who were the precursors and privies of the present parties, ought to have been put before the jury.

Judgment reversed, and a *venire de novo* awarded.